## Matlock v. Commonwealth.

April 25, 1947.

J. B. Johnson, Judge.

Hiram H. Owens and G. L. Dickinson for appellant.

Eldon S. Dummit, Attorney General, and Richard L. Drye, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

Appellant was convicted of selling intoxicating liquor in local option territory and punishment fixed at 30 days in jail and a fine in the amount of $50. She filed motion for appeal from the judgment.

While 9 grounds are set out in the motion and grounds for new trial, there is presented here the alleged prejudicial error in admitting incompetent evidence.

Sometime in April 1946, Bill Lamb, in company with Imogene Alsip and a fellow by the name of Teague, drove to the home of the appellant, Mrs. Tom Matlock, where Lamb went into the home and purchased a pint and a half of liquor, for which he paid $6.50 Upon his return to the car, where his companions remained, he placed the liquor in the glove compartment. They then proceeded down the road when they were arrested for speeding. The arresting officer discovered the liquor lying in the glove compartment, and according to them, immediately asked Lamb where he obtained it. The reply was at Mrs. Tom Matlock's. It appears that there had been same former trial of the matter, at which Lamb stated that he bought the liquor at Middlesboro, but on this trial he repudiated that statement and admitted he had not told the truth on the former trial and gave as his reason for the first statement that he didn't want to get anyone in trouble.

Miss Alsip was also introduced as a witness in the trial and testified that she was in the car; that Lamb went into the Matlock home; and that upon his return he placed liquor from under his jacket or sweater in the compartment of the car.

R. C. Jones, Constable, who made the arrest, stated that he first saw Lamb and the companions in the car as they came out of Tom Matlock's driveway; that he chased them for about a mile and a half; that the fellow Teague was driving his Lincoln Zephyr; that he flagged them for speeding and reckless driving; and that he got out and put Teague under arrest, at which time he saw the two bottles of liquor in the glove compartment. Jones was then asked about the reputation of Mrs. Matlock. He said that he knew it only through talk, or said he got information from Squire Vermillion that Mrs. Matlock was engaged in the illicit sale of, or traffic in whiskey.

J. H. Pickard, the Circuit Court Clerk of Knox County, was then introduced as a character witness, who testified that Mrs. Matlock had the reputation of selling whiskey. On cross-examination he stated that he had

heard complaints to that effect. He was then asked by attorney for defendant from whom he had had the complaints. He replied: ''Well, Millard Peace's wife, Preacher Roark, Preacher Sears, Mrs. Carter,—I don't know her first name.''

The defendant vigorously protested her innocence and denied any sale of liquor to Lamb or any knowledge of the transaction. She then introduced witnesses who testified as to her good reputation, among whom was the County Judge.

The incompetent evidence about which she most particularly complains is directed at evidence brought out in cross-examination by the Commonwealth Attorney.

On cross-examination the defendant was questioned as follows:

''Q. 24. Do you know why your acquaintances and those who know you say you sell whiskey when you claim you do not? A. I don't understand.

''Q. 25. Do you know why your neighbors claim you are selling whiskey when you claim you have not sold any?

''Objection overruled. Exception.

''A. I didn't know my neighbors was doing that.

''Q. 26. Do you know a fellow by the name of Sears? A. Sears?

''Q. 27. Yes, Preacher Sears. A. No, I don't.

''Q. 28. Do you know a fellow by the name of Roark? A. Yes, I do.

''Q. 29. Do you know a Mrs. Carter? A. Who?

''Q. 30. Mrs. Carter. A. No, I don't.

''Q. 31. Do you know the squire down there? A. Yes, sir.

''Q. 32. Do you know why any or all of those people should accuse you of selling whiskey, when you claim you are not?

''Defendant objects: Overruled: Defendant excepts.

''A. No, I don't.''

Sears, Roark, and Mrs. Carter did not make an appearance before the jury, nor testify in the case. The above questions were asked just as though they had so testified. It is true attorney for defendant, in interrogating one of the Commonwealth's reputation witnesses, asked him where he got his information. Whereupon he replied he had received letters from the above named, yet that information did not justify the Commonwealth's Attorney in interrogating as he did above. Obviously, the above was prejudicial.

It is next contended that repeated questions were asked about the reputation of the place for selling whiskey rather than the reputation of Mrs. Matlock. Mrs. Lizzie Bryant, who was a member of the jury panel at that term of court, and who lived the second door from the defendant, testified that she never heard anyone say, or never heard it questioned, that Mrs. Matlock was engaged in the liquor business. Upon cross-examination, Commonwealth Attorney interrogated as follows:

"Q. 1. You don't know anything about whether or not Bill Lamb bought whiskey there? A. No, I don't know anything about it.

"Q. 2. You don't know if she was selling whiskey at that time or not, do you? A. No, sir, I don't.

"Q. 3. Do you know the reputation of the place for selling whiskey, there where they live?

Defendant Objects: Overruled: Defendant excepts.

"Q. 4. Do you know the reputation of that place, in that community where she lives, for selling whiskey? A. Well, I have heard it."

Other witnesses, including the County Judge of Knox County, who testified about the good reputation of the defendant, upon cross-examination were asked about the reputation of the place. The County Judge was interrogated upon cross-examination as follows:

"Q. 1. Do you know where they live down there, she and her husband? A. Yes.

"Q. 2. Do you know the reputation for being engaged in the whiskey business of the place where she lives, there? A. I knowed of the man being engaged in the whiskey business.

"Q. 3. I am talking about the place, the house she lives in there.

"Defendant objects. Overruled: Defendant excepts.

"A. Yes, sir.

"Q. 4. Do you know the reputation of that place? A. Yes, sir.

"By the Court: I don't know about the 'place,' but he can tell about the 'home.'

"Q. 5. Do you know the reputation of that home for selling whiskey? A. Yes, I have heard that, now.

"Q. 6. Tell the jury what that reputation is.

"Defendant objects: Overruled: Defendant excepts.

"A. It's bad.

"Q. 7. Did that reputation, that same reputation for being bad, exist last April and May of this year, 1946? A. Well, yes, I think so.

"Redirect Examination

"Q. 1. That reputation wasn't as to Mrs. Matlock, was it, that she engaged in selling whiskey? A. No, sir, not Mrs. Matlock.

"Q. 2. It was as to a man? A. It was a man.

"Q. 3. The court has permitted you to testify as to the reputation of that place, I think that is correct. That reputation was with reference to a matter that happened some time ago as to a party other than Mrs. Matlock; that's right, isn't it? A. That's right, yes sir.

"Recross Examination

"Q. 1. Since Mr. Dickinson asked about a particular matter, what was that matter, Judge, which you had in mind?

"Defendant objects: Overruled: Defendant excepts.

"A. Well, I don't know what it was, myself, unless it was a case I had in my court of this man having whiskey in possession, and it was in my court.

"Q. 2. Tom Matlock? A. Yes, Tom Matlock himself.

"Q. 3. The husband of the defendant? A. Yes, sir.

"Q. 4. Was Mrs. Matlock in court at the time that took place?

"Plaintiff objects: Overruled: Plaintiff excepts.

"A. No, sir.

"Q. 5. Do you know if she was in the home at that time? A. No, sir, I don't know that."

The court, after overruling objections to that line of questioning, then admonished the jury as follows:

"Ladies and Gentlemen, the evidence with respect to the place or the home or this house being engaged in the business of selling whiskey can be received by you only for the purpose, if in your opinion it does so show, of showing the opportunity or advantage in the operation of a place to so sell whiskey, and it cannot be received by you as substantive evidence against this defendant, but only for the purpose of showing opportunity for her to be in that business of selling liquor."

At first blush it might appear that the above admonition corrected the highly prejudicial matter of allowing testimony to go in about the reputation of the place, but upon serious consideration it can be readily seen that such admonition did not make the correction. It appears from the testimony of the County Judge of Knox County, and Irvin Brewer, that the reputation of the place for the traffic in liquor sprung out of a matter that did not involve Mrs. Matlock, the defendant. The place, therefore, could have had a bad reputation from conduct of others in the family rather than the conduct of Mrs. Matlock, and the fact that she was the wife and mother in the home could not necessarily be construed as affording her an opportunity to sell liquor merely because the place had a bad reputation. The objection to this line of questioning should have been sustained.

The Commonwealth Attorney introduced evidence of the purchase of the liquor, and one or two witnesses who testified as to the reputation of Mrs. Matlock as being engaged in the sale of liquor. It was entirely unnecessary and beyond reason to go to the extent the Commonwealth Attorney did relative to the reputation.

of the place and as to the accusations by people who were not witnesses and who had made no appearance and, consequently, could not be cross-examined.

We conclude that the contention of the appellant relative to the incompetent and prejudicial matter admitted in evidence is well taken.

Wherefore, the judgment is reversed.